**2026 UT App 106**

## THE UTAH COURT OF APPEALS

BRANDI HAMMON,
Appellant,
*v.*
ZOOM INC. AND HELEN TAYLOR,
Appellees.

Opinion
No. 20241273-CA
Filed July 16, 2026

Second District Court, Ogden Department
The Honorable Jason Nelson
No. 220905080

Matthew M. Boley, Bradley M. Strassberg, and
Joshua D. Jewkes, Attorneys for Appellant

Thor Roundy and Cory B. Mattson,
Attorneys for Appellees

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

OLIVER, Judge:

¶1      Brandi Hammon, an experienced real estate agent, entered into numerous short-term loan agreements with Zoom Inc. (Zoom) between 2006 and 2009 in order to invest in real estate. More than a decade later, Hammon had not repaid the loans, and interest had accumulated to the point that she owed over ten million dollars. When Zoom began foreclosure proceedings on the properties that secured the loans, Hammon sued Zoom and its representative, Helen Taylor, claiming they were obligated to take the properties in full satisfaction of the loan agreements.

¶2      The district court dismissed her claim for fraud and denied her motion for leave to amend that claim. It later granted summary judgment to Zoom and Taylor on Hammon's other claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory and equitable estoppel, as well as on her request for a declaratory judgment that the contracts were unconscionable. Hammon challenges these rulings on appeal. We affirm most of the district court's rulings, but we conclude Hammon is entitled to seek a declaratory judgment from the court as to the terms of the contracts. We therefore affirm in part and reverse in part and remand for additional proceedings.

BACKGROUND[1]

¶3      Hammon is an experienced real estate agent and broker who has "been borrowing money to invest in real estate . . . since at least 1993." She had also worked with Taylor before and considered Taylor a mentor in the real estate business. Zoom, a company controlled by Taylor, initially purchased and resold single-family properties and later became a lender issuing short-term, high-interest loans.

*The Loan Agreements and Modifications*

¶4      In November 2006, Hammon entered the first of three loan agreements with Zoom (collectively, the contracts). The 2006 loan

---

1. In cases where we review a grant of a motion to dismiss for failure to state a claim or a grant of summary judgment, we recite the facts in the light most favorable to the nonmoving party. *See Mathews v. McCown*, 2025 UT 34, n.2, 575 P.3d 1114 (motion to dismiss); *Greene v. Mongie*, 2025 UT App 11, n.1, 564 P.3d 536 (motion for summary judgment).

utilized three documents: a trust deed note (the 2006 Note), a deed in lieu of foreclosure, and a trust deed.

¶5      The 2006 Note detailed the terms of the loan: Hammon borrowed $40,000 and was obligated to pay it back thirty days later on December 29, 2006. Following the due date, interest would accrue "at the rate of [t]wenty[-f]ive [p]ercent (25%) per annum, compounded daily, on the unpaid principal." Additionally, the 2006 Note specified that if the full loan was not repaid on time, Hammon would be required to make "interest payments in the amount of" $800 per month until the note was paid in full. The 2006 Note also stated Zoom could "declare the entire principal balance and accrued interest due and payable" at any point if Hammon defaulted in her payments. And the 2006 Note acknowledged Zoom was "in receipt of a [d]eed in [l]ieu of [f]oreclosure" that could "be recorded by [Zoom] if [the 2006 Note] [was] not paid [in] full by January 2nd, 2007[,] with no further notice given to [Hammon]."

¶6      The deed in lieu of foreclosure, if recorded by Zoom, would transfer ownership of property owned by Hammon to Zoom in "full satisfaction of all obligations" of the 2006 Note. The trust deed served to "secure[] payment" of the 2006 Note and gave Zoom a security interest in the same property referenced in the deed in lieu of foreclosure.

¶7      In November 2007, Hammon and Zoom executed a second loan with an accompanying trust deed note (the 2007 Note), deed in lieu of foreclosure, and trust deed. The principal amount of the 2007 Note was $208,300, and the remaining terms—including interest accrual and Zoom's rights—were identical to the 2006 Note. Specifically, the 2007 Note contained language indicating Zoom was "in receipt of a [d]eed in [l]ieu of [f]oreclosure" which Zoom could "record[] . . . if [the 2007 Note] [was] not paid [in] full by December 15, 2007[,] with no further notice given to [Hammon]." This deed in lieu of foreclosure would, like the one executed in 2006, transfer ownership of additional property

owned by Hammon to Zoom, and such transfer would be in "full satisfaction of all obligations" of the 2007 Note. The accompanying trust deed secured the principal from the 2007 Note to that same property.

¶8     Several months later, in early 2008, Hammon and Zoom executed a trust deed note modification, which increased the principal of the 2007 Note by $36,400, to a total of $244,700. At this time, the parties likewise executed a trust deed modification to secure the additional principal under the rights of the trust deed from 2007.

¶9     Finally, in early 2009, Hammon entered into another loan agreement (the 2009 Note) with Zoom. The 2009 Note was for a principal loan of $15,625 with a fifteen percent interest rate "compounded daily" and the principal balance "due within 90 days."

¶10    A couple of months later, Hammon and Zoom again modified the 2007 trust deed, this time to secure the 2009 Note. The parties also executed a new deed in lieu of foreclosure that, if recorded, would transfer ownership of Hammon's property to Zoom in "full satisfaction of all obligations" for the 2006 Note, the 2007 Note, the 2008 modification, and the 2009 Note.

*The Default*

¶11    Hammon made no loan payments until early 2010, when she made one payment of $5,000. Then in 2012, Hammon repaid the 2009 Note in full and began making $500 monthly payments on her remaining loans. In 2022, after making $500 monthly payments for ten years, Hammon received a notice of default from Zoom calling Hammon's loans due. At that point, Hammon owed approximately $10 million on those loans. Thereafter, Zoom recorded the notice of default. It elected to sell the property that

secured these loans and did not record any of the deeds in lieu of foreclosure.[2]

*The Lawsuit*

¶12 Hammon and her company, Moose Development LLC (Moose),[3] sued Zoom and Taylor, alleging breach of contract, estoppel, breach of the implied covenant of good faith and fair dealing, and fraud and seeking a declaratory judgment that the loans were unconscionable.[4] Because Zoom intended to sell the property securing the loans, Hammon also sought a preliminary injunction to stay such a sale. The court granted the preliminary injunction, concluding Hammon had met her burden because she "demonstrated a likelihood" that she would prevail on the merits of her claims.

¶13 Zoom then answered the complaint, and Taylor filed a motion to dismiss. Taylor argued all claims against her should be dismissed under rule 12(b)(6) of the Utah Rules of Civil Procedure for failure to state a claim because she was not a party to the contracts. Taylor also argued that the fraud claim was not pleaded with the particularity required by rule 9(c) of the Utah Rules of Civil Procedure. The district court granted the motion in part and denied it in part. The court dismissed Hammon's breach of contract and declaratory judgment claims against Taylor because

---

2. Zoom later filed suit against Hammon seeking a deficiency judgment, which remains pending. *See Zoom Inc. v. Hammon*, No. 250902241 (Utah Second Dist. Ct. filed Mar. 21, 2025). That lawsuit is not at issue in this appeal.

3. Moose is not a party to this appeal.

4. Hammon and Moose also asserted a cause of action for "Injunctive Relief." But "injunctive relief" is not a cause of action; it is a remedy. Hammon and Moose eventually conceded that they could not bring such a claim.

Taylor was not a party to the contracts. It also dismissed Hammon's fraud claim because it determined that claim had not been pleaded with sufficient particularity.[5] And because the estoppel claim relied on the commission of fraud, the court also dismissed that claim. However, the court denied Taylor's motion to dismiss Hammon's claim for breach of the implied covenant of good faith and fair dealing.

¶14 Hammon and Moose then moved to amend the complaint, seeking to address the deficiencies in the fraud and estoppel claims. In Hammon's proposed amended complaint, she added additional factual allegations to support her fraud claims and asserted causes of action for both promissory and equitable estoppel based on statements made by Taylor. The court granted the motion to amend as to the estoppel claim but denied the motion as to the fraud claims, concluding any amendment of the fraud claims would be futile not only because it would be barred by the economic loss rule but also because Hammon again failed to plead fraud with the required particularity.

¶15 Following discovery, Zoom and Taylor jointly moved for summary judgment. The court granted the motion as to all claims brought by Moose, concluding Moose did not have standing because it was not a party to the contracts. Turning to Hammon's claims, the court likewise granted summary judgment to Zoom and Taylor. As to Zoom, the court concluded no jury could find

---

5. The parties appear to believe the court dismissed Hammon's fraud claims as to both Zoom and Taylor. But after withdrawing an initial joint motion to dismiss, Zoom answered the complaint and only Taylor filed an amended motion to dismiss the fraud claim. Zoom never filed a motion for judgment on the pleadings or for summary judgment on the fraud claim. Thus, the fraud claim against Zoom was never presented to the district court for a dispositive ruling. Notwithstanding this procedural anomaly, we consider the fraud claim here as if it was properly dismissed because the parties on appeal have briefed it as if it was.

Zoom breached the contract based on the plain language of the loan agreements. The court also concluded Hammon had not presented enough evidence to prove the elements of unconscionability. Finally, the court concluded Zoom had acted in accordance with the terms of the contract and such contractually permissible actions could not support a determination that Zoom had breached the implied covenant of good faith and fair dealing. As to the sole remaining claim against Taylor for breach of the implied covenant, the court concluded Hammon could not pierce the corporate veil where the fraud claims had been dismissed and there were no other facts demonstrating that Taylor acted in bad faith.

¶16 Zoom and Taylor also filed a motion for summary judgment on Hammon's and Moose's amended claims for promissory and equitable estoppel. As to Moose's claims, the district court again granted summary judgment because of "Moose's lack of involvement in the alleged conduct giving rise to [the] estoppel claims." Turning to Hammon's claims, the court likewise granted summary judgment to Zoom and Taylor. Regarding promissory estoppel, the court concluded Hammon was not injured and could not show any reasonably induced reliance based on statements made by Taylor. And the court concluded there were no facts asserted to support a claim for equitable estoppel.

ISSUES AND STANDARDS OF REVIEW

¶17 Hammon first challenges the district court's dismissal of her fraud claims. "The propriety of a dismissal under rule 12(b)(6) is a question of law we review for correctness." *Tuttle v. Olds*, 2007 UT App 10, ¶ 6, 155 P.3d 893. She also challenges the district court's denial of her request for leave to amend her fraud claims. "We overturn a [district] court's denial of a motion to amend a complaint only when we find an abuse of discretion." *Kelly v. Hard Money Funding, Inc.*, 2004 UT App 44, ¶ 14, 87 P.3d 734.

¶18 Hammon next challenges the district court's grant of summary judgment on her equitable and contract claims. We review a grant of summary judgment for correctness. *See R4 Constructors LLC v. InBalance Yoga Corp.*, 2024 UT App 121, ¶ 6, 557 P.3d 595.

ANALYSIS

I. Fraud Claims

¶19 Hammon asserts the district court erred when it dismissed her fraud claims against Zoom and Taylor. She further asserts the district court abused its discretion when it denied her motion for leave to amend her fraud claims. Because we conclude that Hammon's fraud claims are ultimately barred by the economic loss rule, we affirm both of the district court's rulings.

A. Hammon's Fraud Allegations

¶20 In her complaint, Hammon alleged that Zoom and Taylor committed fraud in connection with the contracts when Taylor represented to Hammon that Zoom did not "intend to foreclose" and when "Taylor, on behalf of Lender, . . . insisted to Hammon that the . . . [d]eed in [l]ieu must be provided as *the* remedy for default . . . ."[6]

¶21 In her proposed amended complaint, Hammon added additional allegations to support her fraud claims. She continued to allege that, "Taylor, on behalf of Lender, told Hammon the

---

6. In her complaint, Hammon defined "Lender" as "Zoom." In her proposed amended complaint, Hammon changed her definition of "Lender" from "Zoom" to Zoom and Taylor "collectively." But regardless of the moniker used by Hammon, Taylor was not a party to the contracts in her personal capacity and thus could not be the "Lender."

[d]eed in [l]ieu was necessary to be executed as the 'bargained-for' form of relief" for the contracts. She added allegations that Taylor "declared and represented to Hammon" statements to the effect of "I don't want to foreclose," "It's not good for either of us," and "So you have to sign this deed in lieu of foreclosure . . . which protects both of us." Although she still asserted only a single claim for fraud, Hammon added claims for both fraudulent nondisclosure and fraudulent concealment based on allegations that Taylor "came to believe that [the] deeds in lieu were not valid" and "did not share" that belief with Hammon.

B.      The Economic Loss Rule

¶22      "The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law . . . and tort law . . . ." *Reighard v. Yates*, 2012 UT 45, ¶ 19, 285 P.3d 1168 (cleaned up). "When the conflict that arises between parties to a contract is regarding the subject matter of that contract[,] the contractual relationship controls, and parties are not permitted to assert actions in tort." *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 15, 435 P.3d 193 (cleaned up). "All contract duties, and all breaches of those duties must be enforced pursuant to contract law." *Reighard*, 2012 UT 45, ¶ 21 (cleaned up). But "when a duty exists that does not overlap with those contemplated in contract, the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care." *HealthBanc*, 2018 UT 61, ¶ 15 (cleaned up).

1.      Fraud Claim Against Zoom

¶23      Here, the parties do not dispute the existence of the contracts between Hammon and Zoom. Indeed, Hammon has brought a breach of contract claim against Zoom for failing to file the deeds in lieu of foreclosure and instead instituting foreclosure proceedings. The crux of Hammon's fraud allegations is that Zoom did not abide by the representations Taylor made to her about the remedies Zoom would seek in the event Hammon

defaulted on the loans. Specifically, Hammon alleges Taylor told her that Zoom did not want to foreclose and instead intended to file the deeds in lieu of foreclosure as the sole remedy for default. These allegations concern the exact same conduct as the contract claims brought by Hammon against Zoom. *See Grynberg v. Questar Pipeline Co.*, 2003 UT 8, ¶ 53, 70 P.3d 1 (applying the economic loss rule to bar tort claims where "the exact same conduct is described in both the contract and tort claims, and the exact same facts and circumstances are at play"). Thus, where the contract and tort claims completely overlap, the economic loss rule bars Hammon's fraud claim against Zoom unless she can point to an independent tort duty owed to her by Zoom. *See HealthBanc*, 2018 UT 61, ¶¶ 9–10, 15; *see also Larson v. Stauffer*, 2022 UT App 108, ¶ 32, 518 P.3d 175 ("A party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." (cleaned up)).

¶24     Hammon asserts her fraud claim is not barred by the economic loss rule because it "derive[s] from duties independent of the contract." But her brief fails to identify any independent duty owed to her by Zoom. In the absence of an independent duty, Hammon's fraud claim against Zoom is barred by the economic loss rule.

2.     Fraud Claim Against Taylor

¶25     It is undisputed that Taylor—in her personal capacity—is not a party to the contracts between Zoom and Hammon. Yet Hammon's fraud claim against Taylor is based on the same conduct as the fraud claim against Zoom: Taylor made promises to Hammon about the remedies Zoom would seek in the event of a default. Hammon never asserted—either in her complaint or on appeal—that Taylor promised her these things in a personal capacity. Indeed, Hammon asserted in both her complaint and proposed amended complaint that Taylor was acting "on behalf of Lender." And because Taylor was the only person involved in

the contracts on behalf of Zoom, it was incumbent upon Hammon, if she wished to state a claim against Taylor in her personal capacity, to point to facts demonstrating that Taylor acted on behalf of herself and not on behalf of Zoom in making the alleged promises. Hammon has failed to do so. Accordingly, under the facts alleged by Hammon, to the extent Taylor made any promises to Hammon, those promises were made in the context of Taylor acting as Zoom's officer or agent and not as an individual.

¶26 Therefore, we must determine whether a fraud claim against an officer or agent acting in a corporate capacity is barred by the economic loss rule. This question has not been previously addressed by Utah courts. But the U.S. District Court for the District of Utah recently answered this same question. We find the federal court's reasoning persuasive and adopt it here.

¶27 In *Healthcare Co. v. MPI Group LLC*, the plaintiff sued both a corporate entity and an officer of the company for fraud, fraudulent nondisclosure, and negligent misrepresentation for "falsely represent[ing] material facts about" the subject matter of the contract the officer had negotiated on behalf of the company. No. 25-cv-00031, 2025 WL 2733548, at *3–4 (D. Utah Sep. 25, 2025). The officer asserted that the economic loss rule barred all of the claims against him. *Id.* at *4. Recognizing that Utah courts had not "directly addressed whether claims against officers acting in a corporate capacity may be barred by the economic loss rule," the federal court undertook a detailed analysis in order to "predict whether the Utah Supreme Court would apply the economic loss rule" to such claims. *Id*. at *5.

¶28 The federal court first looked to the rationale behind Utah's adoption of the economic loss rule, which is to "prevent the 'blurring of the line between tort and contract law' that would come with allowing 'tort claims that directly overlap breach of contract claims.'" *Id.* (quoting *HealthBanc Int'l, LLC v. Synergy Worldwide, Inc.*, 2018 UT 61, ¶ 16, 435 P.3d 193). The federal court

recognized that "[i]f a party was permitted to make fraud claims against an agent who negotiated a contract on behalf of a corporate entity and whose misrepresentations were also a breach . . . under the contract, the line between tort and contract would blur." *Id.* It then concluded, "This would allow contracting parties to circumvent the economic loss rule . . . ." *Id.*

¶29 Next, because "the Utah Supreme Court expressly adopted its independent duty analysis for the economic loss rule from Colorado law," *id.* at *6 (citing *Hermansen v. Tasulis*, 2002 UT 52, ¶ 17, 48 P.3d 235), the federal court looked to Colorado appellate courts' analyses of this issue, *id.* at *6 n.82. Specifically, the court examined *Former TCHR, LLC v. First Hand Management LLC*, 2012 COA 129, ¶ 25, 317 P.3d 1226, where the Colorado Court of Appeals concluded that the economic loss rule "may also bar claims against [a corporate] entity's officers and directors, even if the officers and directors were not parties to the contract at issue." *Id*. at *6 n.83.[7]

¶30 Finally, the federal court looked to other jurisdictions, including cases from Arizona, Georgia, and Florida, which provided "persuasive reasoning that the economic loss rule should prevent claims against corporate officers who are not parties to contracts in certain situations." *Id*. at *6. It then concluded "it is likely that the Utah Supreme Court would hold that the economic loss rule bars claims against corporate officers when the tort claims at issue overlap completely with contractual duties." *Id.*

¶31 We agree with the federal court's analysis. Utah courts have previously declined to carve out exceptions to the economic loss rule where the contract and tort claims overlap completely.

---

7. The Colorado court held that the economic loss rule also barred claims of fraudulent misrepresentation and fraudulent concealment against the corporation's agents. *Former TCHR, LLC v. First Hand Mgmt. LLC*, 2012 COA 129, ¶¶ 26, 33, 317 P.3d 1226.

*See HealthBanc*, 2018 UT 61, ¶ 19 (concluding the economic loss rule barred "a fraudulent inducement claim that overlaps completely with a contract claim"); *Thorp v. Charlwood*, 2021 UT App 118, ¶ 31, 501 P.3d 1166 (concluding the economic loss rule barred a fraudulent misrepresentation claim that "overlaps completely with a contract claim"). As our supreme court explained in *Reighard v. Yates*, "when a conflict arises between parties to a contract regarding the subject matter of that contract, the contractual relationship controls, and parties are not permitted to assert actions in tort in an attempt to circumvent the bargain they agreed upon." 2012 UT 45, ¶ 20, 285 P.3d 1168 (cleaned up). But that is precisely what Hammon is attempting to do here with her fraud claim against Taylor.

¶32 Hammon has asserted a breach of contract claim against Zoom for its decision to foreclose and to not accept the deeds in lieu of foreclosure in full satisfaction of the debt. Her allegations in support of her fraud claims against Zoom and Taylor are based on the same conduct in connection with the enforcement of the contracts. As explained above, *see supra* ¶¶ 23–24, her fraud claim against Zoom is barred by the economic loss rule. It thus follows that her fraud claim against Taylor is barred by the economic loss rule as well. If we permitted a party to a contract to pursue tort claims against the corporate agent or officer who negotiated the contract on behalf of the corporation, such an exception would swallow the rule. *See Former TCHR*, 2012 COA 129, ¶¶ 30, 33 (holding the economic loss rule barred fraud claims against two corporate agents and "declin[ing] to endorse such an end run around the [contract]'s express terms"); *cf. HealthBanc*, 2018 UT 61, ¶¶ 19, 23 (declining to recognize an exception to the economic loss rule for "fraudulent inducement claims that overlap completely with a breach of contract claim" because the "exception would swallow the rule"). We therefore decline to recognize such an exception.

¶33 Thus, the economic loss rule bars Hammon's claim for fraud against Taylor unless she can show that Taylor owed her

"an independent duty of care under tort law." *Larson v. Stauffer*, 2022 UT App 108, ¶ 32, 518 P.3d 175 (cleaned up). But despite Hammon's assertion that her fraud claim "derive[s] from duties independent of the contract," she fails to identify any independent duty owed to her by Taylor in her brief. Accordingly, her fraud claim against Taylor is barred by the economic loss rule.

¶34　In sum, because Hammon's fraud claims against Zoom and Taylor are ultimately barred by the economic loss rule, we affirm the dismissal of her fraud claims on this alternative ground.[8] *See Madsen v. Washington Mut. Bank*, 2008 UT 69, ¶ 26, 199 P.3d 898 ("When reviewing a decision made on one ground, we have the discretion to affirm the judgment on an alternative ground if it is apparent in the record." (cleaned up)). And because any amendment would be futile where the claims are barred by the economic loss rule, we likewise conclude that the district court did not abuse its discretion in denying Hammon's motion for leave to amend her fraud claims against Zoom and Taylor.

## II. Equitable Claims

¶35　Hammon asserts the district court erred in granting summary judgment to Zoom and Taylor on her claims for estoppel and unconscionability. Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Utah R. Civ. P. 56(a).

> Where . . . the nonmoving party will bear the burden
> at trial, the moving party may carry its burden of
> persuasion on summary judgment without putting

---

8. The district court dismissed Hammon's fraud claim against Taylor for failure to plead with the required particularity. *See supra* ¶ 13. And, as noted previously, we treat Hammon's fraud claim against Zoom as if it had been likewise dismissed. *See supra* n.5.

on any evidence of its own—by showing that the nonmoving party has no evidence to support an essential element of a claim. Upon such a showing, the burden then shifts to the nonmoving party, who may not rest upon the mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial.

*S6, LLC v. Wing Enters., Inc.*, 2024 UT App 105, ¶ 27, 556 P.3d 100 (cleaned up). As the plaintiff in this case, Hammon bore the burden of persuasion on all her claims at trial and, therefore, needed to provide proof of all essential elements of her claims to survive summary judgment. *See Salo v. Tyler*, 2018 UT 7, ¶ 26, 417 P.3d 581. We address the propriety of the grant of summary judgment on each of Hammon's equitable claims below.

## A. Estoppel

¶36    On appeal, Hammon presents a single argument in support of both of her estoppel claims. She argues the district court erred in granting summary judgment to Zoom and Taylor because she "presented substantial evidence" in support of her estoppel claims. We disagree and affirm the district court.

### 1. Equitable Estoppel

¶37    Equitable estoppel is available as an affirmative defense in Utah. *See, e.g., Youngblood v. Auto-Owners Ins. Co.*, 2007 UT 28, ¶ 12, 158 P.3d 1088 ("Our caselaw recognizes equitable estoppel and promissory estoppel as two distinct legal principles, [the former] a defense and [the latter] a cause of action in most instances."). Hammon urges us to read *Youngblood* as allowing equitable estoppel to be raised as an affirmative cause of action for which she can seek monetary damages. However, such an interpretation construes the holding in *Youngblood* too broadly. While the *Youngblood* court did choose to "depart from our traditional distinctions between equitable and promissory

estoppel," *id.* ¶ 13, it made clear this departure was only appropriate for insurance coverage disputes, *see id.* ¶ 12 ("[I]n insurance coverage cases like this one the technical distinction between equitable and promissory estoppel is of less analytic utility and approaches being irrelevant."); *id.* ¶ 20 (concluding the distinctions between promissory and equitable estoppel "make little difference in the matter of insurance coverage disputes"); *id.* ¶ 23 ("[T]he difference between equitable and promissory estoppel has become inconsequential particularly in *insurance* cases."). This exception to the distinction between equitable and promissory estoppel has not been extended to other types of disputes, and we decline to do so here.

¶38 Therefore, the district court did not err in granting summary judgment to Zoom and Taylor on Hammon's claim for equitable estoppel as it cannot be brought as an affirmative claim.[9]

2. Promissory Estoppel

¶39 Promissory estoppel requires "(1) a promise reasonably expected to induce reliance; (2) reasonable reliance inducing action or forbearance on the part of the promisee or a third person; and (3) detriment to the promisee or third person." *Cottonwood Improvement Dist. v. Qwest Corp.*, 2013 UT App 24, ¶ 3, 296 P.3d 754 (cleaned up). It "arises in instances where no formal contract exists." *Youngblood*, 2007 UT 28, ¶ 18 (cleaned up). "Where there is an enforceable contract governing the rights and obligations of the parties relating to the conduct at issue, equitable remedies are not available." *Ward v. McGarry*, 2022 UT App 62, ¶ 15, 511 P.3d 1213 (cleaned up).

---

9. Even though Hammon cannot raise equitable estoppel as an affirmative cause of action here, we offer no opinion on whether she may be able to raise equitable estoppel as an affirmative defense in the deficiency action filed by Zoom. *See supra* n.2.

¶40    It is undisputed that there are contracts between Hammon and Zoom regarding the various loans. Indeed, Hammon has brought a claim against Zoom for breach of contract. And while the contents of these contracts and the resulting obligations are disputed by the parties, their existence is not. Because there are enforceable contracts between Hammon and Zoom, Hammon cannot bring a claim for promissory estoppel to enforce the parties' rights and obligations regarding the loan agreements. Thus the district court correctly granted summary judgment to Zoom on this claim.

¶41    As to the claim for promissory estoppel against Taylor, Hammon challenges the district court's determination that Hammon could not demonstrate that she reasonably relied on Taylor's promises. We elect to affirm the district court on the alternative ground that Hammon has not presented adequate evidence that Taylor was acting in a personal capacity, rather than as a representative of Zoom, and therefore cannot be held personally liable. *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 ("It is well settled that an appellate court may affirm the judgment appealed from if it is sustainable on any legal ground or theory apparent on the record . . . ." (cleaned up)).

¶42    As explained above, *see supra* ¶ 25, to the extent Taylor made any promises to Hammon, those promises (i.e., promises of what contract remedies Zoom would pursue in the event of default) were made in the context of her acting as Zoom's agent and not as an individual. Hammon has not distinguished the conduct of Taylor acting on behalf of Zoom and Taylor acting on behalf of herself. Thus, Hammon has "failed to present competent evidence that [Taylor] was acting in anything other than a representative capacity for [Zoom]" in the parties' dealings. *See Daines v. Vincent*, 2008 UT 51, ¶ 40, 190 P.3d 1269; *see id.* ¶¶ 16, 40–41 (dismissing various claims, including one for promissory estoppel, in a similar context in which the plaintiff had failed to demonstrate that the corporate officer had been acting in his personal capacity). Accordingly, the district court did not err in

granting summary judgment to Taylor on Hammon's claim for promissory estoppel.

B.      Declaratory Judgment Regarding the Terms of the Contracts and Regarding Unconscionability

¶43     Hammon argues the district court erred when it granted summary judgment to Zoom on Hammon's request for a declaratory judgment regarding what the terms of the contracts were and whether those terms were unconscionable.[10] The court concluded Hammon's damages were speculative at that time—Zoom had not yet filed its deficiency action—and Hammon had not "overcome the 'heavy burden' that plaintiffs face when claiming unconscionability." However, the court did not make any findings as to what the terms of the contracts actually were before assessing whether those terms were procedurally or substantively unconscionable.

¶44     For a plaintiff to seek a declaratory judgment, "(1) there must be a justiciable controversy; (2) the interests of the parties must be adverse; (3) the parties seeking relief must have a legally protectible interest in the controversy; and (4) the issues between the parties must be ripe for judicial determination." *Bleazard v. City of Erda*, 2024 UT 17, ¶ 40, 552 P.3d 183 (cleaned up). Here, the propriety of the contracts and accompanying deeds in lieu of foreclosure constitute a justiciable controversy, Hammon and Zoom are adverse, both parties have a legally protectible interest, and the issues are ripe as Zoom sought foreclosure on Hammon's properties. Therefore, Hammon can rightly seek a declaratory judgment from the district court and is entitled to have the court determine the terms of the contracts. In particular, Hammon asked the district court to determine whether the contracts required Zoom to take the secured properties as its exclusive

---

10. Hammon did not appeal the dismissal of her claim for a declaratory judgment against Taylor.

remedy for default (via the deeds in lieu of foreclosure) and thus preclude Zoom from suing for deficiency.

¶45 As the terms of the contracts had not yet been determined by the district court, the court's conclusions regarding unconscionability were premature. Accordingly, we reverse the grant of summary judgment on Hammon's claim for unconscionability against Zoom and remand this claim for the court to determine what the terms of the contracts are. After it does so, the court should reevaluate the merits of Hammon's assertion that the terms of the contracts are unconscionable.

### III. Contract Claims

¶46 Hammon argues on appeal that there were genuine issues of material fact that precluded summary judgment on her claims of breach of contract as to Zoom[11] and breach of the implied covenant of good faith and fair dealing as to Zoom and Taylor. Because we have remanded the matter for a determination of the terms of the contracts, *see supra* ¶ 45, we conclude it was also premature for the court to rule on these two claims as to Zoom. We therefore reverse the court's grant of summary judgment to Zoom on these claims.

¶47 In addition, we determine that another legal principle—the first breach rule—is potentially applicable to Hammon's breach of contract claim. We therefore instruct the district court on remand to assess whether the defense has been waived by Zoom and, if not, whether the rule bars Hammon's claims. According to the first breach rule, "a party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform. He [or she] can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform." *Cross v. Olsen*, 2013 UT App

---

11. Hammon did not appeal the dismissal of her claim for breach of contract against Taylor.

135, ¶ 25, 303 P.3d 1030 (cleaned up). "Only a material breach will excuse further performance by the non-breaching party." *Id.* ¶ 26. For a breach to be considered material, it must go "to the heart of the contract itself,"—"a failure of performance which defeats the very object of the contract or is of such prime importance that the contract would not have been made if default in that particular had been contemplated." *Id.* ¶¶ 26, 27 (cleaned up). "Whether a party has substantially performed is ordinarily an issue of fact for the fact finder," and "unless there could be no reasonable difference of opinion in light of the available evidence," it is inappropriate for the district court to "decide this question as a matter of law." *Larson v. Stauffer*, 2022 UT App 108, ¶ 23, 518 P.3d 175 (cleaned up); *see also Cross*, 2013 UT App 135, ¶ 29 ("Summary judgment is appropriate on such factual questions when they fall on either end of a factual continuum: when there could be no reasonable difference of opinion, or when the facts are so tenuous, vague, or insufficiently established that determining the factual issue becomes completely speculative." (cleaned up)).

¶48　Because this is a question of fact, we remand the matter to the district court to make the determination of whether Zoom may assert the first breach rule as a defense and, if so, whether a material breach has occurred. If the district court finds Zoom has waived this defense, Hammon's claims would proceed for further adjudication. If Zoom has not waived this defense and the district court finds it applicable, Hammon's claims would be barred under the first breach rule. *See Cook Martin Poulson PC v. Smith*, 2026 UT App 54, ¶¶ 64–65 (remanding the matter to the district court to determine whether the first breach rule precluded contract claims).

¶49　As to Hammon's claim for breach of the implied covenant of good faith and fair dealing against Taylor, Hammon has failed to carry her burden of persuasion on appeal. The district court granted summary judgment to Taylor on this claim on the ground that Hammon had failed to set forth sufficient facts upon which the court could pierce the corporate veil and hold Taylor

personally liable. Hammon fails to even mention the district court's ruling on this ground, let alone "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8). Accordingly, she has failed to carry her burden on appeal of demonstrating that the district court erred in granting summary judgment to Taylor on this claim. *See Big Game Forever v. Peterson*, 2024 UT App 78, ¶ 19, 551 P.3d 411 ("An appellant who does not meaningfully engage with the district court's reasoning falls short of demonstrating any error on the part of the district court." (cleaned up)).

CONCLUSION

¶50     We affirm the district court's dismissal of Hammon's fraud claims against Zoom and Taylor and its denial of her motion to amend such claims. We also affirm the grant of summary judgment on Hammon's claims of promissory and equitable estoppel as to both Zoom and Taylor. And we affirm the grant of summary judgment to Taylor on Hammon's claim for breach of the implied covenant of good faith and fair dealing.

¶51     We reverse the grant of summary judgment to Zoom on Hammon's claims for declaratory judgment, breach of contract, and breach of the implied covenant of good faith and fair dealing. We remand the matter to the district court to first determine what the terms of the contracts actually are. After it completes that task, the court should then evaluate the merits of the parties' claims and defenses, including (as necessary) whether the terms of the contracts have been breached, whether the first breach rule applies, and whether the terms of the contracts are unconscionable.

———————